IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CRAIG GALLOWAY, | § § | |
| Petitioner, | § | |
| VS. | § § | CIVIL ACTION NO. H-05-1202 |
| DOUGLAS DRETKE, | § § | |
| Respondent. | § § | |

**MEMORANDUM OPINION AND ORDER**

Craig Galloway, a state inmate represented by counsel, seeks habeas corpus relief under 28 U.S.C. § 2254, challenging his state felony conviction for sexual assault of a child. Respondent has filed a motion for summary judgment, with a copy of the state court records. (Docket Entry No. 7.) Petitioner has responded. (Docket Entry No. 9.)

After considering the pleadings, the motion and response, the record, and the applicable law, the Court **GRANTS** summary judgment and **DISMISSES** this action.

**I.     PROCEDURAL BACKGROUND**

A jury found petitioner guilty of sexual assault of a child in 2000 under cause number 835988 in the 179th District Court of Harris County, Texas, and assessed punishment at fourteen years confinement. The conviction was affirmed on appeal. *Galloway v. State*, No. 01-01-00039-CR (Tex. App.–Houston [1st Dist.] 2001, pet. ref'd) (not designated for publication). The Texas Court of Criminal Appeals refused discretionary review. Petitioner's application for state habeas relief was denied without a written order on the

findings of the trial court without a hearing. *Ex parte Galloway*, Application No. 58,437-02, at cover.

In this federal habeas petition, petitioner raises the following grounds for relief:

(1) the trial court denied him the right to present a defense by excluding

    (a) evidence of complainant's prior statements;

    (b) evidence of a movie that complainant watched;

(2) trial counsel was ineffective in

    (a) failing to preserve error regarding complainant's prior statements;

    (b) eliciting testimony from a therapist as to complainant's truthfulness; and

(3) testimony regarding complainant's truthfulness denied petitioner due process.

Respondent moves for summary judgment, and argues that these grounds fail as a matter of law.

## II. FACTUAL BACKGROUND

The state appellate court set forth the following statement of facts in its opinion:

> A.D.C., a 15-year-old girl, testified that she and appellant [FN. A.D.C. testified that appellant was in his twenties. According to the record, appellant's birthday is July 7, 1972] engaged in sexual intercourse on four separate occasions. Appellant did not testify at trial.
>
> A.D.C. testified she lived in the Sandhouse Apartments with her mother. In September 1999, A.D.C. met her neighbors, 22-year-old Amy Crawford and 29-year-old Kristy Lemley. A.D.C. and Crawford became friends and

routinely spent time together at Crawford's apartment. Crawford tutored and assisted A.D.C. with her algebra homework.

Appellant moved into the Sandstone Apartments in November 1999. Shortly thereafter, appellant was introduced to A.D.C. while both were present at Crawford's apartment. During November, appellant lost 10 dollars she borrowed from her mother. A.D.C. testified appellant offered to replace A.D.C.'s 10 dollars in return for '10 dollars worth of smooches.' A.D.C. accepted the 10 dollars from appellant. Appellant later kissed A.D.C. on her cheek and further exchanged kisses on the lips with A.D.C. on five subsequent occasions.

Crawford testified that, beginning December 10, 1999, she regarded appellant as her boyfriend. A.D.C. testified that Crawford saw her kiss appellant while Crawford and appellant were dating.

A.D.C. testified that, before Christmas break, she received a note from a school-aged friend. The note in pertinent part reads, 'But noway, what's up b-tween you and [Appellant] still got booty call!' The note was written before any sexual encounters between A.D.C. and appellant. Additionally, A.D.C. and the author of the note agree that the term 'booty call' is a reference to A.D.C. and appellant 'kissing and hugging.'

A.D.C.'s mother became unexpectedly ill and was hospitalized from December 23, 1999 to January 4, 2000. While hospitalized, A.D.C.'s mother made arrangements for A.D.C. to stay with Crawford. During this time A.D.C. testified that appellant began to repeatedly visit her in her mother's apartment. Appellant invited A.D.C. to have sexual intercourse on several of these occasions. A.D.C. informed appellant that she was a virgin and wanted to wait until she married to have sex. However, after repeated invitations, A.D.C. finally had sex with appellant. At trial, A.D.C. admitted that she had sex with appellant because she wanted to please him. A.D.C. testified that she had sex with appellant on three additional occasions at her apartment before her mother returned from the hospital. According to A.D.C., appellant urged her not to tell anyone about their sexual encounters. Crawford testified that A.D.C. and appellant were never alone together.

After her return, A.D.C.'s mother noticed a change in complaint's [*sic*] normal behavior. A.D.C.'s mother testified that, on her return, A.D.C. was angry, weepy, and withdrawn and that A.D.C. scratched the word 'hate' into her arm with broken glass. A.D.C. testified that her mother threatened to send her to military school or an alternative school.

A.D.C.'s mother testified that she went to Crawford's apartment to inquire about A.D.C.'s sudden change in behavior. Present at Crawford's apartment were Crawford, appellant, and Kristy Lemley. Appellant was talking on the telephone. A.D.C.'s mother told Crawford, appellant, and Lemley that she would no longer allow A.D.C. to spend time with them outside her apartment. Her reasoning was based upon the discrepancy of age between A.D.C. and Crawford, appellant, and Lemley. During this visit, and after appellant hung up the telephone, he declared that his ex-girlfriend was HIV-positive.

The next day, while searching in A.D.C.'s purse, A.D.C.'s mother discovered the note written by A.D.C.'s school-aged friend. A.D.C.'s mother interpreted the expression 'booty call' to mean a sexual reference to A.D.C. and appellant. A.D.C.'s mother confronted appellant and A.D.C. simultaneously for an explanation. A.D.C.'s mother testified that appellant's response to the letter was, 'it wasn't cool, that I could get into a lot of trouble with a note like that going around.'

That same week, A.D.C. learned from her mother that appellant's ex-girlfriend was HIV positive. A.D.C. testified that she then visited a school teacher concerning AIDS. A.D.C. confessed to her mother that she and appellant had sex, and A.D.C. asked her mother to make an appointment to see a doctor.

A.D.C. was examined by a nurse at the Children's Assessment Center (CAC) and reported that she had been raped– that the appellant had 'convinced' her to have sex. A.D.C. entered counseling thereafter. The counselor testified that the A.D.C. exhibited behavior consistent with her having been sexually assaulted.

*Galloway* at 1-2.

### III. THE APPLICABLE LEGAL STANDARDS

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§ 2254(d)(1) and (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Court's precedent. *Early v. Packer*, 537 U.S. 3, 7-8 (2002). A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 409, 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on

a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state-court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Petitioner asserts that this Court need not afford deference to the state habeas court's findings, as the state court denied him due process by adopting *verbatim* the State's proposed findings. Even assuming that the trial court's action were improper, deficiencies in state habeas proceedings are not matters of constitutional dimension, and provide no grounds for relief in federal court. *See Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999). Petitioner's due process rights were not violated by the state court's adoption of the State's proposed findings, and the findings will be afforded the proper deference due under AEDPA.

## IV.   EXCLUSION OF EVIDENCE

Petitioner argues that the trial court denied him the right to present a defense by excluding evidence of (a) complainant's prior statements, and (b) a movie complainant watched prior to the offense. Each issue will be addressed separately.

A.   Prior Statements

On direct appeal, petitioner argued that the trial court erred in excluding prior statements of complainant that she (1) wished her boyfriend had moved to the apartment

complex so she could "get her some"; (2) offered to give a "blow job to a boy on the school bus"; and (3) stated on one occasion that her mother was in their apartment "getting her some, and if it had been her she would have been doing the same thing." Petitioner argued on appeal that the statements were admissible under Rule 412(b) of the Texas Rules of Evidence. In noting that petitioner had not relied on Rule 412(b) at trial, the appellate court held as follows:

> Appellant has failed to preserve his argument that A.D.C.'s statements are admissible because his trial objection does not comport with his argument on appeal. In order to preserve error, the purpose now asserted by appellant should have been specifically set forth at trial. A specific objection pointing out reasons for error is necessary to preserve error. In *Rodriguez*, the defendant's witness was denied the right to testify, and defendant made no specific objection to the trial court's ruling. A defendant must object when the trial court excludes the testimony of one of his witnesses. Since no specific objection was voiced at trial, the specific grounds raised on appeal were not preserved for review. In this case, appellant made no specific objection when questioning A.D.C. and now attempts to argue specific grounds on appeal.

*Galloway* at 3 (citations omitted). On collateral review, petitioner reurged his argument that the evidence was admissible under Rule 412(b). In denying habeas relief, the state habeas court made the following relevant findings:

> Applicant's allegation that he was denied his right to present a defense as a result of the trial court excluding evidence of the complainant's purported prior statements need not be considered since this claim was raised on direct appeal and rejected by the Court of Appeals[.]
>
> Applicant's trial counsel failed to preserve error pursuant to Rule 412(b) of the Rules of Evidence concerning the trial court's exclusion of testimony related to the complainant's purported statements alluding to sex[.]

> Alternatively, Applicant fails to show that he was denied his right to present a defense since the trial court properly excluded evidence of the complainant's purported prior statements pursuant to Rule 412 of the Rules of Evidence[.]
>
> Alternatively, Applicant fails to show that the evidence related to the complainant's purported statements was admissible (a) under any exception established in Rule 412(b) of the Rules of Evidence and (b) since this evidence constituted inadmissible hearsay[.]

*Ex parte Galloway*, pp. 72-73 (Findings of Fact Nos. 1, 2, 5, 7; citation omitted). The Texas Court of Criminal Appeals relied on these findings in denying habeas relief.

The failure to preserve error at the state court level is an adequate state procedural bar for purposes of federal habeas review. *Hughes v. Dretke*, 412 F.3d 582, 592-93 (5th Cir. 2005). Although the state habeas court addressed in the alternative the merits of petitioner's claim, when a state court bases its decision upon the alternative grounds of procedural default and a rejection of the merits, a federal court must, in the absence of good "cause" and "prejudice" or the showing of a miscarriage of justice, deny habeas relief because of the procedural default. *Cook v. Lynaugh*, 821 F.2d 1072, 1077 (5th Cir. 1987). To establish "cause," a petitioner must show either that some objective external factor impeded defense counsel's ability to comply with the state's procedural rules or that trial counsel rendered ineffective assistance. *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (holding that proof of ineffective assistance by counsel satisfies the "cause" prong of the exception to the procedural default doctrine). While a showing of ineffective assistance can satisfy the "cause" requirement, as explained under Part V hereinafter, petitioner's complaint regarding

8

counsel's failure to preserve error does not satisfy either prong of the *Strickland* test for ineffective assistance.

In order to satisfy the "miscarriage of justice" test, petitioner must supplement his constitutional claim with a colorable showing of factual innocence. *See Sawyer v. Whitley*, 505 U.S. 333, 335-36, (1992). To satisfy the "factual innocence" standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *See id.* Petitioner neither makes nor attempts to make a showing of factual innocence.

Accordingly, this issue has been procedurally defaulted and is barred from consideration by the Court.

B.   The Movie

Petitioner also contends that the trial court denied him the right to present a defense by excluding evidence of the movie, "American Pie," which complainant had watched at some point prior to her relationship with petitioner. According to petitioner, certain events in the movie mirrored details of the offense given by complainant and impeached her credibility. In likewise rejecting this argument due to petitioner's failure to preserve error at trial, the state habeas court made the following relevant findings:

> Applicant's allegation that he was denied the right to present a defense as a result of the trial court excluding the movie 'American Pie' need not be considered since Applicant fails to show that he preserved any error related to this trial court ruling[.]

> Alternatively, Applicant fails to show that he was denied his right to present a defense since the trial court properly excluded from evidence the movie 'American Pie' since its admission would only have bolstered the uncontested testimony of Amy Crawford[.]

*Ex parte Galloway*, p. 72 (Findings of Fact Nos. 3, 4). The Texas Court of Criminal Appeals relied on these findings in denying habeas relief.

As previously noted, the failure to preserve error at the state court level is an adequate state procedural bar for purposes of federal habeas review. *Hughes v. Dretke*, 412 F.3d 582, 592-93 (5th Cir. 2005). In the absence of good "cause" and "prejudice" or the showing of a miscarriage of justice, this Court must deny habeas relief because of the procedural default. *Cook v. Lynaugh*, 821 F.2d 1072, 1077 (5th Cir. 1987). Petitioner neither presents nor attempts to present any cause or prejudice to excuse his procedural default as to this issue, nor does he make or attempt to make a showing of factual innocence.

Accordingly, this issue has been procedurally defaulted and is barred from consideration by the Court.

## V.   INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally

deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard,

unreliability or unfairness does not result if the ineffectiveness does not deprive the defendant of any substantive or procedural right to which he is entitled. *Id.*

Petitioner asserts that counsel failed to preserve error as to the exclusion of complainant's prior statements, and that he elicited inadmissible, adverse testimony from complainant's therapist. Each issue will be addressed separately.

A.  Failure to Preserve Error

Petitioner complains that counsel failed to preserve for appellate review the trial court's erroneous exclusion of complainant's statements referenced under Part IV, above. In denying habeas relief, the state court made the following relevant findings:

> Applicant's allegation of ineffective assistance for failing to properly preserve error concerning the complainant's purported statements should not be considered since Applicant merely presents skeletal and conclusory allegations concerning the admissibility of these purported statements which are insufficient to warrant habeas relief[.]
>
> Alternatively, Applicant fails to show that the evidence related to the complainant's purported statements was admissible (a) under any exception established in Rule 412(b) of the Rules of Evidence and (b) since this evidence constituted inadmissible hearsay[.]
>
> The totality of the representation afforded Applicant was sufficient to protect his right to reasonably effective assistance of counsel[.]

*Ex parte Galloway*, p. 72 (Findings of Fact Nos. 6, 7, 11; citation omitted). The Texas Court of Criminal Appeals relied on these findings in denying habeas relief.

12

On direct appeal, petitioner argued that the excluded evidence was admissible under Rule 412(b) of the Texas Rules of Evidence. The appellate court disagreed due to trial counsel's failure to preserve any error. On collateral review, petitioner again asserted admissibility of the evidence under Rule 412(b), but the state habeas court found that the evidence was inadmissible under that Rule. Because the habeas court found that the excluded statements of complainant were inadmissible hearsay under state law, a finding which was relied on by the Texas Court of Criminal Appeals in denying habeas relief, counsel was not deficient in failing to preserve error.

A federal habeas court does not sit to review the mere admissibility of evidence under state law. In reviewing state court evidentiary rulings, this Court's role is limited to determining whether a trial judge's error was so extreme that it constituted denial of fundamental fairness and due process under the Fourteenth Amendment. *See Brown v. Dretke*, 419 F.3d 365, 377 (5th Cir. 2005); *Castillo v. Johnson*, 141 F.3d 218, 222, 224 (5th Cir. 1998). This Court finds no such denial of fundamental fairness or due process. In asserting admissibility of the evidence under Rule 412(b), petitioner relies on *Miles v. State*, 61 S.W.3d 682, 686-87 (Tex. App. – Houston [1st Dist.] 2001, pet. ref'd). In *Miles*, the state appellate court allowed the defendant to present evidence of the complainant's prior sexual history and behavior to rebut the State's medical evidence of sexual abuse. In the present case, trial counsel testified by affidavit on collateral review that,

13

> The excluded statements could have established that scientifically, the torn hymen of the complainant could well have come from someone else. First we attempted to elicit from the complainant that she had been upset about a boy leaving her complex because she had been *planning* to 'get her some.' We also attempted on two occasions to establish this evidence and were denied during the examination of the complainant and witness Amy Crews. Additionally, the statements that the complainant *wanted* to give a boy a blow job on the school bus and references to her mother having sex and the complainant *wanting* to do the same thing were also denied. We objected repeatedly to the trial court that these statements should have been used to impeach the complainant.

*Ex parte Galloway*, p. 69 (emphasis added).

Unlike the proffered evidence in *Miles*, the hearsay statements referenced by petitioner were not of complainant's prior sexual history or behavior, but rather, of her sexual awareness, attitudes, or wishes that did not rebut or explain the State's scientific evidence. The state court's finding against ineffective assistance of counsel reasonably applied the law to the facts, consistent with clearly-established federal law under *Strickland*, and was not objectively unreasonable. An independent review of the state court record does not reveal clear and convincing evidence that would rebut the presumed correctness of the state court's findings and adjudication of petitioner's claim. No basis for habeas relief is shown. 28 U.S.C. § 2254(d)(1).

B.   <u>Elicitation of Testimony from Therapist</u>

Although petitioner casts this argument as a denial of due process, his complaint arises from evidence that he himself introduced at trial. Accordingly, the Court will recast

this argument as one claiming ineffective assistance of counsel in counsel's eliciting the complained-of testimony.

Petitioner complains that trial counsel was ineffective in his cross-examination of complainant's therapist, as shown by the following exchange between defense counsel and the therapist:

> Q: You're not supposed to figure out whether or not somebody's been sexually abused?
>
> A: When someone comes into my office and they report something to me, I'm a therapist. It's not my job to decide if what they're reporting is the truth, no, that's not my job.
>
> Q: Well, if you don't know the truth, then how do you counsel these people?
>
> A: When people come to me and they report something, my belief is that they reported it and it is the truth. You can't develop a therapeutic relationship with someone that believes you don't believe what they're saying.
>
> Q: So every time somebody comes in there and tells you they were abused, you automatically believe it, right?
>
> A: Yes.
>
> Q: And you based your opinions from there forward, right? The first assumption is that, they told it to me, so they're abused, so I'm going forward with my treatment.
>
> A: Yes. When individuals come into our agency and they have a presenting issue, yes, we go forward from there with their treatment, that's correct.
>
> Q: So, you don't have any idea whether it's true or not, right?
>
> A: In my professional opinion, I believe it's true.

Petitioner complains that through this cross-examination, trial counsel elicited an inadmissible opinion from the therapist of her professional belief in complainant's truthfulness. In his affidavit submitted to the state habeas court, trial counsel testified that although he had no strategy in asking the therapist "about the truthfulness of alleged victim (*sic*)," he felt it was an appropriate inquiry at the time. *Ex parte Galloway*, p. 70. The state habeas court made the following relevant findings on this issue:

> Applicant's trial counsel strategically questioned [the therapist] about the truthfulness of the complainant's allegations in support of the defense theory that the complainant's accusations were not credible because no one had tested their veracity[.]
>
> Applicant's trial counsel's assertions that he did not have any strategic basis for asking [the therapist] about the complainant's truthfulness are not credible and carry no evidentiary value[.]
>
> Applicant fails to show that he was denied due process and denied his constitutional right to counsel as a result of his trial counsel questioning [the therapist] about her belief concerning whether the complainant was telling the truth[.]
>
> The totality of the representation afforded Applicant was sufficient to protect his right to reasonably effective assistance of counsel[.]

*Ex parte Galloway*, pp. 72-73 (Findings of Fact Nos. 8, 9, 10, 11). The Court of Criminal Appeals based its denial of habeas relief on these findings.

Although petitioner argues that trial counsel's cross-examination established the therapist's assessment and determination of complainant's credibility, the exchange clearly shows to the contrary. Through his interrogations, trial counsel established that for

therapeutic purposes, the therapist simply accepted complainant's allegations without question. This was not an unreasonable trial tactic. Nor does petitioner establish that but for this cross-examination, the result of his trial would have been different.

An independent review of the record shows that the state court's findings reasonably applied the law to the facts, consistent with clearly-established federal law, and were not objectively unreasonable. Petitioner fails to present clear and convincing evidence that would rebut the presumed correctness of the state court's adjudication of petitioner's claim of ineffective assistance of counsel. No basis for habeas relief is shown. 28 U.S.C. § 2254(d)(1).

## VI.   CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 7) is **GRANTED**. The petition for a writ of habeas corpus is **DENIED**, and his case is **DISMISSED**. Any and all pending motions are **DENIED** as moot. A certificate of appealability is **DENIED**.

SIGNED at Houston, Texas on the 12 day of December, 2005.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE